# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**SANDRA P.[1],**

      **Plaintiff,**

**v.**                         **Civil Action No. 2:21cv127**

**COMMISSIONER OF**
**SOCIAL SECURITY**

      **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff Sandra P. appeals the Commissioner of Social Security's ("Commissioner") denial of her claim for disability insurance benefits ("DIB"). Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") failed to accommodate her mental impairments, finding them non-severe at Step Two, and lacked sufficient medical evidence to support his assessment of Plaintiff's Residual Functional Capacity ("RFC"). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

      After reviewing the parties' briefs and the administrative record of the Commissioner's findings, this Report concludes that the ALJ properly assessed Plaintiff's mental impairments at Step Two and considered their effect on her functional capacity in arriving at her RFC. However, the ALJ's analysis of her fibromyalgia symptoms appears contrary to the later-decided Fourth Circuit opinion in <u>Arakas v. Commissioner, Social Security Administration</u>, 983 F.3d 83 (4th Cir.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

2020).   Specifically, the ALJ appears to have discounted medical opinions and Plaintiff's complaints of pain based primarily on her history of conservative treatment and lack of objective findings.  Given her severe impairment of fibromyalgia, these references are insufficient after Arakas and remand for additional scrutiny of the medical evidence is required before concluding Plaintiff was not disabled.  Accordingly, for the reasons stated in detail below, this Report recommends that the court DENY the Commissioner's Motion for Summary Judgment (ECF No. 22) and GRANT IN PART and DENY IN PART Plaintiff's Motion for Summary Judgment (ECF No. 17), and REMAND the Commissioner's final decision for review under Arakas.

## I.   PROCEDURAL BACKGROUND

On March 19, 2019, Plaintiff filed an application for DIB.  (R. 77).  She alleged that she was disabled as of May 30, 2014, due to fibromyalgia, osteoarthritis, chronic obstructive pulmonary disease ("COPD"), endometriosis, and fibroids.  (R. 15, 77).  The state agency denied her application initially and again upon reconsideration.  (R. 104, 114).  Plaintiff then requested an administrative hearing, which was conducted by telephone on August 31, 2020.  (R. 29-57).

The ALJ denied Plaintiff's claims for DIB, finding she was not disabled during the period alleged.  (R. 15-25).  The Appeals Council denied review, thus making the ALJ's decision a final decision of the Commissioner.  (R. 1-3).  Plaintiff then filed the Complaint in the present action seeking review of the administrative proceedings.  Compl. (ECF No. 1).

In this court, Plaintiff argues remand is required because the ALJ found her mental impairments non-severe, and this finding "impacted the remainder of the decision" on her functional capacity for work.  Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem.) (ECF No. 18, at 9-11).  She argues the ALJ did not accommodate any mental limitations due to the non-severity finding at Step Two and thus, the RFC is not supported by substantial evidence.  Id.  She also argues the

ALJ failed to ground his RFC finding on substantial evidence given her diagnosis of fibromyalgia. Id. at 2–15. The Commissioner disagrees with each of these points, arguing that the ALJ's RFC findings are supported by substantial evidence. Def.'s Mem. Supp. Summ. J. ("Def.'s Mem.") (ECF No. 23, at 9–15). After a review of the record, this Report considers each of these arguments.

## II.   **FACTUAL BACKGROUND**

Plaintiff was 57 at the date of her alleged onset and 63 at the time of the ALJ's decision. (R. 77). She completed two years of college and has past relevant work for 27 years as a mail handler. (R. 39, 175). She reported limited activity since retiring from the postal service in 2014, mainly household tasks like laundry, dusting, making beds, and selfcare. (R. 43, 195).

A.    Medical Treatment

   1.   Mental Impairments

With respect to her alleged mental impairments, the medical record does not reflect any treatment by specialized psychiatric or mental health providers. Her condition was regularly addressed in observations regarding her mental status, and related diagnoses from her treating providers, including primarily those treating her fibromyalgia. See, e.g., (R. 282, 308). During these mental status examinations, she was usually listed as alert, oriented, with intact concentration and attention. See, e.g.,  (R. 283, 289, 295, 410, 425). She had appropriate mood and affect. (R. 398, 404, 420). On those occasions when she described symptoms of depression, she remained alert with appropriate mood and affect. (R. 313, 415–16).

In June 2017, her primary care physician first recorded a diagnosis of Major Depressive Disorder, moderate, and began treating her condition with medication, which was also directed towards her fibromyalgia pain.  (R. 443). At a follow-up visit in December 2017, Plaintiff completed Form PHQ-9, a patient history questionnaire administered by her treating physician.

3

(R. 437).  Her score of 26 translated to "severe depression," but her condition is consistently referred to in her medical records as Major Depressive Disorder ("MDD"), moderate.  Id.  She continued to treat her mental health along with her fibromyalgia with a prescription for Cymbalta. (R. 444).  She reported "significant improvement in her fibromyalgia pain after one week on the medicine." Id.  In 2018, she reported increased anxiety and a tingling in her feet.  She changed medicines from Cymbalta to Lexapro.  Id.  In 2019, she reported that her functioning was "somewhat difficult," a symptom she attributed to her chronic pain.  (R. 413).  She declined additional medication at this time, saying the side effects made her feel worse.  Id.  Throughout the treatment record, Plaintiff did not receive any counseling or specialist-directed treatment for her mental health complaints which were addressed in ongoing visits with her primary providers, and apparently treated in tandem with her fibromyalgia.

      2.      Physical Symptoms and Fibromyalgia

With regard to her physical symptoms and fibromyalgia, the medical record begins in 2016 with complaints of tingling in her hands and feet.  (R. 369).  She complained that she was "always hurting and always fatigued," describing her condition as chronic pain in her neck and knee.  (R. 369).  Her physician referred her to a rheumatologist for a consultation.  (R. 370).

On December 2, 2016, Plaintiff saw Andrew Miller, D.O., who diagnosed polyarthralgia, and generalized osteoarthritis, as well as a frozen shoulder.  (R. 312).  On physical examination, Plaintiff had mild knee crepitus, a mildly decreased range of motion in her shoulder, but good strength and normal range of motion otherwise.  (R. 313).  Dr. Miller prescribed low impact exercises and Tylenol.  (R. 312).

In May 2017, Plaintiff sustained a right wrist fracture during a fall.  (R. 306, 308).  By August of 2017, her fracture had healed but she continued to report pain in her right wrist, thumb

and shoulder. (R. 299-300). Her treating orthopedist, Carolyn Triepel, M.D., discussed further treatment options, including the possibility of a fusion surgery of her thumb joint versus injections but Plaintiff declined these interventions, stating her condition did not warrant them. (R. 299). She was diagnosed with status post-right distal radius fracture, right "gamekeeper's thumb,"[2] and tenosynovitis, and advised to continue with her home exercises. Id. Although Plaintiff requested stronger pain medication, Dr. Triepel declined, suggesting she obtain them from her primary care physician. (R. 299-300).

In June 2017, Plaintiff saw her primary care physician for follow-up of her "chronic conditions and myalgia." (R. 443). The unsigned chart note described her symptoms as "mild," "chronic, and controlled." Id. After only a short time taking Cymbalta, Plaintiff described feeling "normal" and "able to enjoy life." Id. At a follow-up visit in December 2017, Plaintiff reported continuing with Cymbalta, which took "the edge off" her pain. (R. 438). Nonetheless, she described continued pain in her shoulder, neck, and right wrist related to her distal radius fracture. Id. She reported daily exercises that aggravated her fibromyalgia, and she complained of sleeplessness due to pain. Id. Her dose of Cymbalta was increased, and she was directed to follow up in four weeks. (R. 437). When she returned on January 26, 2018, her pain was improved, and she reported feeling "much better" on the increased dose, describing her severity level as "mild to moderate." (R. 433). She described the pain as "burning," aggravated by movement and relieved with medication. Id.

---

[2] Gamekeeper's thumb refers to a detachment of the ligaments between the thumb and hand which can be associated with a traumatic, or overuse injury. See Gamekeeper's Thumb, Medscape, https://emedicine.medscape.com/article/97679-overview (last visited Feb. 28, 2022).

She had follow-up visits in August and November 2018, when examination revealed stable findings. (R. 417, 422). In August, she described her condition as "chronic pain that she deals with." (R. 422). Her condition remained stable. (R. 425). On November 26, 2018, her fibromyalgia was described as "worsening" with symptoms like numbness in her feet and fatigue. (R. 417). She stopped taking Cymbalta in favor of Lexapro. Id. See also (R. 425).

In March 2019, Plaintiff saw Mary Huntley-Wagner, FNP, for complaints of asthma, musculoskeletal pain, and depression. (R. 412). She reported joint pain, general body aches, numbness in her extremities, and back pain. (R. 412–15). She reported being unable to tolerate Cymbalta and had been prescribed new medications. (R. 413). She attributed her depression to chronic pain. Id.

Also in March 2019, Plaintiff consulted with Julie Flores, NP, a vascular specialist, due to concerns about Raynaud's Syndrome in her toes and fingers. (R. 281). She also described her fingertips turning white with exposure to cold. Id. She was continued on medications. (R. 281-82).

From April 2019 through August 2019 Plaintiff continued to have complaints of bilateral leg pain. She treated with primary care providers at Tidewater Family Medicine which treated her fibromyalgia with Gabapentin, and her Raynaud's Syndrome with Nifedipine. See e.g., (R. 400). At an office visit on August 22, 2019, her joints were tender to palpation and she exhibited multiple trigger points. (R. 398). She complained of worsening knee pain that her providers continued to manage with medication changes. (R. 395-96). She was also treated that day for plantar fasciitis, which she stated caused aching sharp pain in her feet, that was worse when first standing. (R. 396).

B.     Opinion Testimony

In addition to her treating physicians, the record before the ALJ included evidence from state agency providers who reviewed the record, examined the Plaintiff, and opined regarding her condition. Specifically, on September 2019, Plaintiff was examined by Shawn Bryant, M.D. (R. 461–65). Dr. Bryant noted Plaintiff's diagnosis of fibromyalgia, and complaints of osteoarthritis in her neck, lower back, and right wrist. (R. 461). His examination demonstrated that Plaintiff could get on and off the examination table and remove her shoes without assistance. (R. 462). She was alert, oriented, with good cognition, and no spinal tenderness, and she had negative straight leg raising findings. (R. 463). She displayed normal ambulation, full grip strength, and intact strength and sensation over her extremities. Id. He concluded that her impairments were managed with medication. (R. 461). With regard to physical limitations, however, Dr. Bryant opined that Plaintiff would be able to sit 30 minutes to an hour at a time, stand and walk 30 to 45 minutes at a time, or 3 hours in an 8-hour workday with normal breaks. (R. 464). He found that she could lift or carry 15 pounds frequently and 25 pounds occasionally and was able to perform manipulative maneuvers frequently. Id.

Plaintiff's records were reviewed by state agency examiner Brian Strain, M.D. Dr. Strain opined that Plaintiff could occasionally and frequently could lift or carry up to 25 pounds and sit or walk 6 hours in an 8-hour workday. (R. 84). He found no limits in her ability to push or pull, but he found she would be limited to frequent left and right overhead reaching. (R. 84-85). He also concluded she should avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, and poor ventilation. (R. 85). At the reconsideration level, Jack Hutcheson, M.D., essentially agreed with Dr. Strain's conclusions regarding her physical limitations. (R. 97). Richard Luck, Ph.D., assessed her mental limitations as mild in all four domains. (R. 95).

C.      Testimony Before the Administrative Law Judge.

    1.      Plaintiff's Testimony

At the hearing, Plaintiff testified that she gets "super stiff" and her body starts to hurt when she sits for long periods of time. (R. 43). She described doing very little at home, stating that her husband prepares the food and does the shopping. Id. She stated she is able to wipe surfaces and mop the floor but does not engage in any social events. (R. 43–44). She denied hobbies, stating that she used to knit and crochet but that her hands hurt too much to do so any longer. (R. 44-45). She did state she gardened once in a "blue moon," and admitted boating with her husband occasionally, until they recently sold the boat. (R. 44-45, 47). She also described previously doing yoga which she had stopped due to her impairments. (R. 45). She described persistent back and foot pain and stated she sometimes cannot raise her arm to brush her hair. Id. She described problems with migraines and muscle pain. (R. 48-49). With respect to her back pain, she stated, "it's always there," and attributed this to "degenerative discs" in her back. (R. 49).

    2.      Testimony from the Vocational Expert

In addition to Plaintiff's testimony, the ALJ received evidence from a Vocational Expert ("VE"). The VE characterized Plaintiff's past work as a mail handler (DOT No. 209.687-014; SVP 4; light work, but medium as performed by Plaintiff). (R. 54). The VE also testified in response to the ALJ's hypothetical that a person of Plaintiff's age, education, and work history who was capable of medium work, with standing and walking limited to four hours out of an eight-hour workday and only occasional bending, stooping, or crouching, would not have work available. Specifically, the VE stated in response to the first hypothetical with respect to unskilled work, "the standing and walking four out of eight would be an issue." (R. 55). However, if standing or walking were limited to six hours (instead of four) out of an eight-hour workday, and

8

the individual could frequently bend, stoop, or crouch, there would be jobs available.  Under this hypothetical, the VE testified that such a person could perform Plaintiff's past relevant work, as well as additional positions available in the national economy.  The VE specifically identified a linen room attendant (DOT No. 222.387-030; SVP 2); marker (DOT 369.687-026; SVP 2) and a checker (DOT No. 369.687-014; SVP 2), all medium work, as jobs which Plaintiff could perform. (R. 56).  The VE offered no testimony on light work or transferrable skills from Plaintiff's prior employment as a mail handler.

### III.    STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and

must be affirmed.  Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

A.   Framework for SSA Disability Evaluation

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.  42 U.S.C. §§ 416(i), 423.  The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).  To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.  20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.  The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1)     Is the individual involved in substantial gainful activity?

(2)     Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)     Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)     Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)     Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See 20 C.F.R. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Lewis v. Berryhill, 858 F.3d 585, 861 (4th Cir. 2017) (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

B.      The ALJ Decision Before the Court for Review

In this case, after conducting the foregoing analysis, the ALJ concluded that Plaintiff met the insured status requirements from her alleged disability onset date of May 30, 2014, through

11

December 31, 2019. See (R. 17). Ultimately, however, the ALJ concluded she had not been under a disability from her alleged onset date through the date of the hearing. See (R. 25).

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date to the date last insured. (R. 17). At Step Two, the ALJ found that Plaintiff suffered from only one severe impairment, fibromyalgia. Id. (citing 20 C.F.R. §§ 404.1520(c)). At Step Three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 19). The ALJ also developed a finding regarding Plaintiff's RFC. He determined Plaintiff had the capacity

> [T]o perform medium work as defined in 20 C.F.R. § 404.1567(c), except — the claimant can frequently bend, stoop, and crouch.

(R. 19). At Step Four, the ALJ found that Plaintiff had past relevant work as a mail handler that she could still perform despite limitations resulting from her severe impairments. (R. 23). The ALJ also made an alternative finding, using the Medical-Vocational Guidelines as a framework for decision making, that Plaintiff could perform additional medium-exertion jobs which exist in the national economy. (R. 24). Consequently, the ALJ determined Plaintiff did not have a qualifying disability during the relevant period and denied her claim for DIB. (R. 25).

C.   The ALJ Properly Evaluated Plaintiff's Non-Severe Mental Impairments, and His RFC Finding Was Not Required to Include Mental Limitations.

Plaintiff first argues the ALJ erred by finding her mental impairments non-severe and therefore failing to account for any mental limitations resulting from them. Pl.'s Mem. (ECF No. 18, at 9-11). Because the RFC contains no restrictions directed to these alleged limitations, she argues that remand is required. Id. I disagree.

Although Plaintiff contends that her mental impairments were severe, she has not identified any medical record suggesting they impose work-related limits any greater than the mild limitations found by the ALJ during his application of the paragraph B criteria at Step Two. In analyzing, the ALJ considered the state agency opinions—the only opinion evidence on mental limitations in the record—and assessed their persuasiveness under the appropriate rule. (R. 22-23); see also 20 C.F.R. § 404.1520(b). At the initial review level, the reviewing physician found Plaintiff had no mental impairments at all. (R. 82-83). At reconsideration, the reviewer concluded her medically determinable diagnosis of depression was non-severe, imposing only mild limitations in all four domains. (R. 94-95).

When impairments are non-severe, by definition they do not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). As a result, there is no requirement under SSA Rules to include specific RFC restrictions directed to mild limitations associated with these non-severe impairments. See Camille B. v. Kijakazi, No. 20-cv-262, 2021 WL 4205341, at *5 (E.D. Va. Sept. 15, 2021) (finding that it was "incorrect" that "an ALJ must always include all limitations she finds credible in her RFC, even if they arise from a non-severe impairment"); Kimberly L. v. Kijakazi, No. 20-cv-536, 2021 WL 4434323, at *18 (E.D. Va. Sept. 9, 2021) ("[T]he ALJ was not obligated to consider plaintiff's non-severe impairments in the RFC determination . . . .")

Contrary to Plaintiff's argument, the ALJ's RFC analysis did not ignore Plaintiff's mild mental limitations. After performing the required analysis of Plaintiff's medically determinable mental impairments at Step Two, he also discussed the paragraph B criteria when evaluating Plaintiff's RFC as required at Step Three. (R. 22-23). The ALJ specifically rejected the opinion of the disability adjudicator who concluded Plaintiff had no medically determinable mental

impairments at all.  (R. 22, 82-83).  The ALJ noted that Plaintiff had received a diagnosis of depression and found the adjudicator's assessments "not persuasive."  (R. 22).  But he found "persuasive" the analysis on reconsideration that her depression was non-severe, imposing only mild limitations. (R. 23).  As the analysis also showed, Plaintiff experienced only "mild symptoms from depression" and had "stable mental health exams."  Id.  In this court, Plaintiff does not articulate any error in this assessment of the medical evidence, or identify any <u>limitation</u> resulting from her depression which she believes the ALJ overlooked.  She has not identified any medical record suggesting she is more limited as a result of her mental impairments, instead focusing on her treating providers' diagnosis of moderate depression which appears repeatedly in the records of routine follow-up care she received.  <u>See</u> Pl.'s Mem. (ECF No. 28, at 10-11).  But a diagnosis alone is insufficient to establish an impairment is severe.  <u>Felton-Miller v. Astrue</u>, 459 F. App'x 226, 229-30 (4th Cir. 2011).  As a result of his detailed assessment—at Steps Two and Three—the ALJ concluded the medical records only supported RFC limitations related to Plaintiff's physical impairments.  (R. 23).  This was not error.

To the extent Plaintiff argues that even mild limitations should be addressed in the RFC, this is incorrect.  <u>Younger v. Berryhill</u>, No. 2:18cv182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019), <u>adopted by</u> 2019 WL 3451305 (July 29, 2019) (finding no error in RFC's analysis of claimant's mild limitation in concentration, persistence, or pace); <u>Suttles v. Colvin</u>, 543 Fed. App'x 824, 826 (10th Cir. 2013) (finding no error when ALJ did not include a mental limitation in the RFC despite mild limitations in concentration, persistence, or pace).  Here, the Plaintiff has not identified any error in the ALJ's analysis of her mild mental limitations.  As a result, this argument provides no basis for remand.

D.   The ALJ's Analysis of the Medical Record Related to Plaintiff's Fibromyalgia Does Not
     Comply with the After-Decided Case of Arakas v. Commissioner, 983 F.3d 83 (4th Cir.
     2020).

Plaintiff next argues the ALJ's RFC finding was "unsupported by any medical opinion."

Pl.'s Mem. (ECF No. 18, at 12).  She claims the ALJ substituted his own evaluation of Plaintiff's

fibromyalgia symptoms when he found certain opinion testimony regarding her physical

limitations less persuasive.  Id. at 13.  In her reply, Plaintiff clarifies that her challenge relates

primarily to the ALJ's reliance on objective findings from other medical records, and a history of

conservative treatment in assessing limitations found by the state agency doctors.  Pl.'s Reply

(ECF No. 24, at 4-5).  Without citing Arakas directly, she identifies this as error given her primary

medically determinable impairment of fibromyalgia.  Id.  After reviewing the record, and the ALJ's

analysis, I conclude that the after-decided decision by the Fourth Circuit in Arakas raises sufficient

doubt about the ALJ's analysis of the evidence related to Plaintiff's fibromyalgia to warrant

remand for a re-evaluation of the medical evidence.

Fibromyalgia is a "unique" disorder "of unknown cause" with "symptoms [that] are

entirely subjective."  Arakas v. Commissioner, 983 F.3d 83, 91, 97 (4th Cir. 2020) (citations

omitted).  In fact, physical examinations of fibromyalgia patients "will usually yield normal

results."  Id. at 96.  As a result, the Fourth Circuit held in Arakas that ALJs "may not rely on

objective medical evidence (or the lack thereof)—even as one of multiple factors—to discount a

claimant's subjective complaints regarding symptoms of fibromyalgia."  Id. at 97.  Though

fibromyalgia must still be diagnosed according to objective criteria, as outlined by the Social

Security Administration in the SSR 12-2p, see SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012), in

this case, the ALJ found that Plaintiff's fibromyalgia was a severe impairment, (R. 17).

Having concluded her fibromyalgia was severe, the ALJ had to evaluate Plaintiff's symptoms, and complaints of pain using the familiar two-step process. See 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). ALJs must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." Arakas, 983 F.3d at 95 (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). At Step One, the claimant must show "objective medical evidence of some condition that could reasonably produce the pain." Id. (quoting Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)). For fibromyalgia, these Rules require that the claimant must show a diagnosis consistent with SSR 12-2p and "well-supported by 'the clinical and laboratory diagnostic techniques . . . generally accepted within the medical community as the appropriate techniques to establish the existence and severity of' fibromyalgia." Id. at 107 (quoting SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996)). It is not clear that the medical record contains sufficient evidence that the diagnostic criteria in SSR 12-2p were met in Plaintiff's case. Specifically, Plaintiff's medical records fail to clearly exclude alternative disorders that might have caused the symptoms she attributes to fibromyalgia. But as noted, the ALJ concluded Plaintiff's fibromyalgia was a severe MDI. (R. 17). He was therefore obligated under SSA Rules to evaluate her complaints and symptoms as outlined in Arakas.

With respect to fibromyalgia, Arakas established that, at Step Two, the ALJ "may not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." Id. (quoting SSR 16-3p, 2016 WL 1119029, at *5). Therefore, at Step Two, a claimant with a diagnostic history of fibromyalgia is "entitled to rely exclusively on subjective evidence." Id. (quoting Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006)). "[A]lthough the two parts of that framework are

related, the analysis during each part is legally distinct, particularly with respect to the significance of objective evidence." In re India G. v. Kijakazi, No. 20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021).

As in this case, the ALJ in Arakas found that she "suffered from the severe medical impairment[] of fibromyalgia," which satisfied Step One of the two-step test. Arakas, 983 F.3d at 94. However, when the ALJ assessed Arakas's RFC, the ALJ "found that Arakas's subjective complaints regarding the severity, persistence, and limiting effects of her symptoms were 'not reliable' and not 'completely consistent with the objective evidence.'" Id. (citing the record). The Fourth Circuit emphasized that this finding could not be based on the absence of objective evidence alone:

> [A]fter finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. At this step, objective evidence is not required to find the claimant disabled. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effect of symptoms solely because the objective medical evidence does not substantiate" them.

Id. at 95 (citations omitted). The ALJ thus improperly discredited Arakas's subjective statements at Step Two because they were not "completely consistent with the objective evidence." Id. at 96. Furthermore, the plaintiff's physician "had explicitly emphasized that fibromyalgia typically did not produce clinical or laboratory abnormalities." Id. After Arakas, ALJs cannot "rely on objective medical evidence (or the lack thereof—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." Id. at 97; Charlene S. v. Saul, No. 20-853, 2021 WL 2141501, at *3 (D. Md. May 26, 2021).

Since the decision, lower courts have consistently applied Arakas to remand cases with insufficient analysis of subjective complaints related to fibromyalgia that meet the diagnostic

17

criteria. See e.g., In re India G., 2021 WL 3930430, at *1-2 ("[T]he ALJ used normal, objective evidence as a factor in discounting plaintiff's subjective complaints about the limiting effects of her fibromyalgia. This is error after Arakas." (citations omitted)); David R. v. Kijakazi, No. 20-1277, 2021 WL 3144528, at *2 (D. Md. July 26, 2021) ("At the second step, the plaintiff is not generally required to produce objective evidence . . . . The Fourth Circuit recently held that this evidentiary rule is particularly forceful in cases where plaintiffs are impaired by fibromyalgia."). Post-Arakas, remand has generally been required when the ALJ found a significant fibromyalgia impairment, but then subsequently discounted the plaintiff's subjective symptoms under Step Two. See, e.g., In re India G., 2021 WL 3930430, at *1; David R., 2021 WL 3144528, at *2; Charlene S., 2021 WL 2141501, at *1; Bryson v. Berryhill, No. 20-cv-00169, 2021 WL 2517682, at *2 (W.D.N.C. June 18, 2021); Suzanne O. v. Saul, No. 20-cv-61, 2021 WL 1195930, at *2 (E.D. Va. Mar. 30, 2021); Charlene L. v. Saul, No. 19-cv-626, 2021 WL 725822, at *3 (E.D. Va. Feb. 3, 2021); cf. Lisa C. v. Saul, No. 20-01179, 2021 WL 3040019, at *2 (D. Md. July 16, 2021).

　　　In this case, though not well addressed in her briefing, it appears that Plaintiff's subjective complaints of pain, and the opinions of the agency evaluators regarding her resulting limitations, may have been improperly discounted by the ALJ, who did not have the benefit of the Fourth Circuit's detailed guidance in Arakas. For example, the consulting examiner, Dr. Bryant, stated that Plaintiff could walk or stand only 3 hours in an 8-hour day, and only occasionally lift 25 pounds. (R. 22). Both agency doctors who reviewed Plaintiff's records likewise concluded she would be limited to lifting no more than 25 pounds. (R. 22). The ALJ found these opinions "not persuasive." (R. 22). In so doing, the ALJ cited a record of "no more than conservative treatment" and "intact strength and a normal gait." (R. 21-22). If the ALJ's conclusions regarding her

complaints of pain related to her fibromyalgia,[3] Arakas prohibited this exact analysis. Arakas, 983
F.3d at 95. These were critical findings because they led him to conclude that Plaintiff was capable
of nearly the full range of medium work with few postural limitations due to her fibromyalgia pain.
(R. 22).

In light of the VE's testimony on which the ALJ's disability finding rests, I cannot say
these potential errors in assessing Plaintiff's physical limitations would be harmless. The
consulting examiner, Dr. Bryant, limited Plaintiff to no more than three hours of walking or
standing in an eight-hour day. (R. 464). At this level of exertion, the VE did not identify any jobs
available to the Plaintiff, who was 63—or closely approaching retirement age at the time of the
hearing. (R. 55-56). And all of the relevant medical opinions the ALJ found "not persuasive,"
concluded that Plaintiff could lift 25 pounds only occasionally, and 15 pounds frequently. (R.
464). But the exertional level for medium work requires lifting up to 50 pounds occasionally with
"frequent lifting or carrying of objects up to twenty-five pounds." 20 C.F.R. § 404.1567(c). Had
the ALJ found this evidence more persuasive in light of Arakas, and limited her to only light work,
it would eliminate the jobs identified by the VE.

Thus, had the ALJ found these limitations more persuasive in light of Arakas, that finding
may have changed his conclusion, or resulted in a directed finding of disability under the Medical-
Vocational Guidelines ("Grid Rules"). 20 C.F.R. Part 404, Subpt. P, App. 2. The Grid Rules
generally dictate a finding of disability for a person—like Plaintiff—who is closely approaching

---

[3] It is not clear that Plaintiff's complained-of limitations did relate to her fibromyalgia diagnosis. Much of
Plaintiff's evidence and testimony conflates Plaintiff's joint and back pain with her other conditions.
Plaintiff described her fibromyalgia in tandem with disc-related back pain, plantar fasciitis, and migraine
headaches. See e.g., (R. 44). This Report recommends no specific findings regarding which symptoms are
attributable to fibromyalgia and which to other diagnoses, but Plaintiff's failure to distinguish between
symptoms indicates that "other disorders that could cause" her symptoms may not have been excluded. See
SSR 12-2p, 2012 WL 3104869.

retirement age, with limited education, whose impairments limit them to performing light work unless they have transferrable skills.  20 C.F.R. Pl. 404 Subpt. P, App. 2, Rule 202.00(c).

Special rules also apply to determine the transferability of skills for "persons of advanced age"—that is, persons at least 55 years old.  Plaintiff was 63 on the date of her hearing.  (R. 77).  In her case, the regulations state:

> [W]e will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

§ 404.1568(d)(4) (emphasis added).  The ALJ's opinion contains no analysis of whether the proposed work identified in his alternative finding was so similar to Plaintiff's past work that she "would need to make very little, if any, vocational adjustment."  Id.

Having reached a conclusion that Plaintiff could perform medium work, the ALJ observed that transferability of skills was not material to his analysis because using the Grid Rules as a framework supports a finding that Plaintiff was not disabled without regard to transferability.  (R. 23).  Because a limitation to light work would significantly change the Commissioner's burden at Step Five, I cannot say an error in assessing her fibromyalgia symptoms and limitations would be harmless.  The court should therefore remand the Commissioner's decision for renewed scrutiny of limitations resulting from her medically determinable impairments consistent with the standard announced in Arakas.

## V.    <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that the court DENY the Commissioner's Motion for Summary Judgment (ECF No. 22), GRANT IN PART and DENY IN PART Plaintiff's Motion for Summary Judgment (ECF No. 17), and REMAND the Commissioner's finding of no disability for further administrative proceedings.

## VI.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                            /s/
                                            Douglas E. Miller
                                            United States Magistrate Judge
                                            _____
                                            DOUGLAS E. MILLER
                                            UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 1, 2022